Filed 3/15/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDGAR RUIZ,<br><br>    Defendant and Appellant. | B312062<br><br>(Los Angeles County<br>Super. Ct. No. MA046882) |
| In re<br><br>    EDGAR RUIZ<br><br>    on<br><br>Habeas Corpus. | B317270 |

Petition for writ of habeas corpus and appeal from an order of the Superior Court of Los Angeles County, Shannon Knight, Judge.  Relief on habeas corpus granted; appeal denied as moot.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

In 2010, Edgar Ruiz was convicted of carjacking, attempted robbery and arson, all committed shortly after he turned 19 years old. Gang allegations connected to each of the three counts were found true as were allegations that a principal personally used a firearm in committing the carjacking and attempted second degree robbery. Ruiz was sentenced to a total term of 26 years four months in state prison; the sentence included consecutive terms for several of the gun and gang allegations. In 2018, the California Department of Corrections and Rehabilitation (CDCR) sent a recall letter to the trial court, seeking to have the court correct an error it made in sentencing Ruiz in 2010 to one-third the mid-term for his conviction for attempted robbery. When CDCR notifies a trial court that one part of a sentence is unauthorized, the resentencing court is entitled to reconsider all sentencing choices. (*People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

The resentencing judge was not the judge who presided over Ruiz's trial. At the April 2018 resentencing, Ruiz was represented by Larry Baker, the same attorney who had represented him at trial. Baker did not remember Ruiz or the trial, did not file any documents in connection with the resentencing hearing, and spoke less than 50 words during the entire proceeding. The resentencing judge stated she had reviewed the case file, including the probation report and the transcript of the original sentencing. She stated her indicated sentence, which reflected her intention to keep the new sentence as close to the original sentence as possible, merely correcting the error in the attempted robbery conviction and striking a previously stayed gang enhancement for the arson conviction. She did not otherwise modify the sentence. The error correction

increased Ruiz's sentence from 26 years four months to life to 27 years eight months to life. Although eight years had passed since Ruiz had been sentenced, Baker, when asked, declined to speak on Ruiz's behalf. The court asked Ruiz if he wished to be heard and Ruiz expressed his remorse and indicated that he had graduated high school in prison and was enrolled in college classes. The judge commended Ruiz, pointed out she had not heard the evidence at trial and orally reviewed the facts of the offenses she had gleaned from the probation report. She stated she would have given Ruiz a harsher sentence had she been the original sentencing judge. Baker again said nothing.

At the conclusion of the hearing, Baker said that he would prepare a notice of appeal. He never did so. As it turns out, Baker had a brain tumor which was diagnosed five months after the hearing. He died in the hospital later that same year.

In May 2021, we granted Ruiz relief from default and permitted him to file the current appeal claiming ineffective assistance of counsel at the resentencing hearing. On appeal, Ruiz contends Baker did nothing to assist him at the resentencing hearing and had no tactical reason for his inaction.

Ruiz also filed this related habeas corpus petition claiming ineffective assistance of counsel. Baker's inaction is clear from the appellate record, specifically the reporter's transcript of the resentencing hearing. Ruiz also provided his own declaration and the Declaration of Marion Wickerd, Baker's secretary, to establish Baker had no tactical reason for his inaction and was suffering from significant memory difficulties impairing his personal and professional functioning.

We indicated we would consider the appeal and habeas petition together.  We then took judicial notice of the appellate record in this habeas proceeding and issued an order to show cause why the relief sought by Ruiz in his petition should not be granted.  We directed counsel to address whether Baker's performance at the April 2, 2018 resentencing hearing amounted to a complete denial of counsel within the meaning of *United States v. Cronic* (1984) 466 U.S. 648, 659 (*Cronic*) and *Bell v. Cone* (2002) 535 U.S. 685, 687 (*Cone*).  We now conclude it does.

## DISCUSSION

In issuing the order to show cause, we made an implicit preliminary determination that Ruiz had carried his burden of allegation, that is, he made a " 'prima facie statement of specific facts which, if established, entitle [petitioner] to habeas corpus relief under existing law.' " (*In re Serrano* (1995) 10 Cal.4th 447, 455.)  As a practical matter, the issuance of the order to show cause creates a "cause" giving the People a right to reply to the petition by a return and to otherwise participate in the court's decision-making process.  (*Ibid.*)  When the respondent elects to file a return, it must allege facts establishing the legality of the petitioner's confinement.  (*People v. Duvall* (1995) 9 Cal.4th 464, 476.)  "The factual allegations of a return must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful.  [Citations.]  In addition to stating facts, the return should also, 'where appropriate, . . . provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed.' " (*Ibid.*)  Here, respondent has not alleged any additional facts responding to Ruiz's allegations, although respondent does propose a different reading of the

4

Declaration of Marion Wickerd than does Ruiz. (*Ibid*.) Thus, no evidentiary hearing is necessary to decide this petition. In sum, the order to show cause represents our preliminary determination that Ruiz has stated facts, which, if established, show a complete denial of counsel within the meaning of *Cronic* and *Cone*.

A. *Complete Denial of Counsel Requires No Showing of Prejudice*

Generally, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability of a more favorable outcome in the absence of the deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).) We always start with a presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (*Id.* at p. 689.)

However, there are three situations in which a defendant need not show prejudice to prevail on a claim of ineffective assistance of counsel. (*Cronic, supra*, 466 U.S. at pp. 658–659.) The United States Supreme Court later summarized these exceptions in *Cone*: "First and '[m]ost obvious' was the 'complete denial of counsel.' [(C*ronic,* at p. 659.)] A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at 'a critical stage,' [(*ibid.*)], a phrase we used in *Hamilton v. Alabama,* 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed. 2d 114 (1961), and *White v. Maryland,* 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed. 2d 193(1963) *(per curiam),* to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused." (*Cone, supra*, 535 U.S. at pp. 695-696.)

Second, the Court "posited that a similar presumption was warranted if 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' [(*Cronic, supra*, 466 U.S. at p. 659.)] Finally, . . . where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected. [(*Cronic,* at pp. 659–662.)]" (*Cone, supra*, 535 U.S. at p. 696.)

As is relevant here, the Court elaborated on the second circumstance: "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said 'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.' [(*Cronic,* at p. 659, italics added.)] Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic,* this difference is not of degree but of kind." (*Cone, supra*, 535 U.S. at pp. 696–697.)[1]

---

[1] At oral argument, respondent suggested that this exception requires a complete failure of counsel throughout the entire trial, and not merely at the (re)sentencing hearing. As the quote above indicates, the claim in *Cone* involved counsel's failure only at the sentencing hearing. Respondent did not address *Cone* or provide any rationale for this court to disallow what the United States Supreme Court has permitted.

6

*Cronic* and *Cone* provide a narrow exception to *Strickland's* prejudice requirement. As the California Supreme Court recognized long ago, "notwithstanding the broad language in the *Cronic* opinion [(*Cronic, supra*, 466 U.S. at p. 659)] to the effect that when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' the right to competent counsel has been denied and the result of the trial is presumptively unreliable, the actual application of *Cronic* has been much more limited. Defendants have been relieved of the obligation to show prejudice only where counsel was either totally absent or was prevented from assisting the defendant at a critical stage." (*In re Visciotti* (1996) 14 Cal.4th 325, 353.) Almost all instances in which a defendant claims that his counsel completely failed to subject the prosecution's case to meaningful adversarial testing turn out not to involve a complete failure, but rather a failure consisting of specific errors and omissions, that is, the defendant's " 'argument [was] not that his counsel failed to oppose the prosecution throughout the . . . proceeding as a whole, but that his counsel failed to do so at specific points.' " (*People v. Banks* (2014) 59 Cal.4th 1113, 1170 (*Banks*) abrogated by *People v. Scott* (2015) 61 Cal.4th 363, 391 & fn. 3.)

B.    *Cronic Is Still Good Law*

Respondent first argues that *Banks* and *People v. Brown* (2014) 59 Cal.4th 86, decided two months before *Banks*, eliminated the second exception in *Cronic,* that is, the complete failure to subject the prosecution's case to meaningful adversarial testing. The Court in *Banks* did not reject defendant's claim because defendant relied on the second ground in *Cronic*. Rather the Court analyzed the substance of the claim and found that "defendant's ineffective assistance of counsel claim must be

7

analyzed under *Strickland* because his 'argument is not that his counsel failed to oppose the prosecution throughout the . . . proceeding as a whole, but that his counsel failed to do so at specific points.' (*Bell v. Cone, supra,* 535 U.S. at p. 697; see *In re Avena* (1996) 12 Cal.4th 694, 727–728 [49 Cal.Rptr.2d 413, 909 P.2d 1017].)" (*Banks, supra*, 59 Cal.4th at p. 1170.) As for *Brown,* which quoted *Visciotti,* we think a more reasonable reading of *Brown* is that it simply acknowledged that the second exception in *Cronic* occurs so rarely as to be almost non-existent. We therefore do not agree that *Cronic* has in any way been overruled.

C.     *Ruiz Suffered a Complete Absence of the Assistance of Counsel.*

Respondent next denies that the performance of Ruiz's attorney amounted to a complete absence of the assistance of counsel. Respondent contends *Cronic* does not apply to situations where counsel has an illness because a lawyer is presumed competent and the burden is on the accused to overcome this presumption. (*Cronic, supra*, 466 U.S. at p. 658.) Respondent claims Ruiz has not offered any evidence that Baker's performance was affected by his medical condition at the time of the resentencing hearing, and that "[t]he mere fact that counsel may have suffered from some mental illness at the time of [the relevant proceedings] has never been recognized by the Supreme Court as grounds to automatically presume prejudice." (See, e.g. *Dows v. Wood* (9th Cir. 2000) 211 F.3d 480, 485.) Respondent notes state and federal courts have also refused to presume prejudice from mental illness (*Smith v. Ylst* (9th Cir. 1987) 826 F.2d 872, 876 ["mental illness is too varied in its symptoms and effects to justify a per se reversal rule"]) or incompetency

8

from alcoholism (*People v. Garrison* (1989) 47 Cal.3d 746, 786 ["a per se rule of deficiency for alcoholic attorneys is contrary to settled law"]).  Rather, according to respondent, courts have consistently applied the *Strickland* standard "where counsel's illness may have affected his or her performance."

Ruiz is not asking us to presume Baker was incompetent at the resentencing hearing due to his subsequently diagnosed brain tumor, or to presume prejudice based solely on Baker's illness.  Rather, Ruiz has provided facts about his own pre-hearing interaction with Baker and Baker's performance at the hearing to show that in addition to suffering from significant memory issues at the time of the hearing, Baker did nothing before, during, or after the hearing to assist Ruiz.  Ruiz's account of Baker's behavior is illuminated and corroborated by Marion Wickerd's account of her employer's mental deterioration beginning in the spring of 2018, about six months before he entered the hospital in September 2018.  It is Baker's complete inaction in April 2018, reasonably attributable to his brain tumor, from which Ruiz seeks to have prejudice presumed.

These facts are compelling.  Ruiz filed a declaration stating that when he met with Baker right before the resentencing, Baker was slouched in his chair with his eyes almost closed.  He acted "slow, tired and sluggish."  Baker did not recognize Ruiz or remember his name.  Baker told Ruiz he did not remember him and said to Ruiz " 'that's crazy that I can't remember representing you.' "  According to Ruiz, Baker did not ask him any questions about his case.  Ruiz asked if he could say something to the judge or show proof that he was going to school and "doing good things" with his life.  Baker said no.  In the declaration Ruiz explained that he did, in fact, end up speaking

9

to the judge when the judge asked him if he wanted to speak to the court, but Baker did not advise Ruiz what to say or back him up in court. In other words, Baker did not "provide the guiding hand that [every] defendant needs." (*Cronic*, *supra*, 466 U.S. at p. 658.)

There is nothing in the record before us or in the transcript of the resentencing hearing to indicate that Baker filed any documents with the court. The transcript of the hearing shows Baker made no argument at all in support of reducing Ruiz's sentence. He made only nine brief statements, few of them full sentences and most in response to questions from the court: (1) "I would."; (2) "Therefore, not 654."; (3) "That is, I'm informed and believe."; (4) "No, ma'am."; (5) "That's it. And I will prepare the appeal."; (6) "I have no recollection of that."; (7) "With the proviso he becomes eligible—."; (8) "Under 3051."; and (9) "If I may be excused, they want me downstairs." When the judge announced her indicated sentence and expressed her intention to adhere as closely as possible to the sentence imposed by the original trial judge, Baker said nothing on behalf of his client. He remained silent. The court specifically asked him if he wished to be heard; Baker replied "No, ma'am."

Although Ruiz spoke to the court when invited to do so, he did not testify under oath, and it does not appear he provided the court with any of the documentary proof of his rehabilitative efforts that Baker told him he could not show the court. Thus, even viewing events at the resentencing hearing as broadly as possible, Baker did not identify or provide any evidence to the trial court for the resentencing. Nor did he argue against the trial court's intention to rely solely on the circumstances of the offense as the prosecutor advocated. And although Baker told the

10

court that he would file an appeal, he did not do even that. In other words, Baker failed to " 'act[] in the role of an advocate' " as the Sixth Amendment requires. (C*ronic, supra,* 466 U.S. at p. 656.)

Additional evidence provided by Marion Wickerd, Baker's secretary, corroborated Ruiz's recollection of his interaction with Baker. She described Baker's cognitive issues, which she stated began in March 2018 (about six months before his brain surgery in September 2018). In spring 2018, she noticed Baker stopped giving her the weekly reports she used for billing, and when she asked for them he would reply that he forgot. By the middle of 2018, Baker was confiding in Wickerd that he was worried about his memory. He told her he was having trouble remembering information about his cases and his clients, and even details in his personal daily life. He told Wickerd he would leave a room and immediately forget where he was going or what he was going to do next, and the problem was getting worse. At some point in 2018, Baker started calling Wickerd to ask her if she knew the name of a case or what courtroom it was in or what calendar days the cases were to be heard. He stopped looking at his files to get information. Wickerd's declaration strongly indicates there was no tactical reason for Baker's non-existent advocacy on behalf of the client he could not remember other than his cognitive decline.

Respondent characterizes Baker's performance as a simple waiver of argument at resentencing. Relying on *People v. Snow* (2003) 30 Cal.4th 43, respondent argues this waiver does not amount to a complete denial of counsel or a complete failure to subject the prosecution's case to meaningful adversarial testing.

11

We find *Snow* inapposite. Snow was a direct appeal in a capital case where counsel waived argument at the sentencing hearing. However, as our Supreme Court pointed out, "by the time of the capital sentencing hearing in that case, counsel had already put considerable mitigating evidence before the jury in connection with the guilt and sanity phases of trial, and in his opening penalty phase statement had brought that evidence to the jury's attention, urging them to consider it in determining the appropriate penalty." (*People v. Snow*, *supra*, 30 Cal.4th at p. 117.) The Court had no evidence before it to explain counsel's decision to waive argument at sentencing and simply concluded that it would be more appropriate to consider the issue of ineffective assistance of counsel in the context of a habeas proceeding. Significantly, relevant to analysis under *Cronic* and *Cone,* the Court discussed in detail what counsel in *Snow* did do on behalf of the defendant, pointing out that the waived closing argument was a small part of the overall trial. (*Snow*, at p. 117.) The Court's approach indicated it did not apply the *Cronic* standard because there was not a total breakdown of advocacy on behalf of the defendant.

Here, unlike *Snow*, counsel's failure went to the entirety of the proceedings. The prosecutor had filed a sentencing memorandum for the original sentencing, and the resentencing court read the file from that trial, including the probation report. Baker did not challenge the earlier arguments supporting the sentence, did not present mitigating evidence on behalf of Ruiz such as his documented prison programming, and did not make any argument at all on behalf of Ruiz concerning his youth or his self-improvement while in prison. Baker did nothing.

12

The trial court had imposed, but stayed, the gang enhancement for the arson conviction and referred to the 15-year to life term for the carjacking conviction which resulted from the gang enhancement as "prescribed by law." The resentencing court indicated it wished to stay as close to the trial court's sentence as possible. Still Baker did not argue. He failed to point out that the law on gang enhancements had been clarified since the time of the original sentencing. (*People v. Fuentes* (2016) 1 Cal.5th 218, 231 (*Fuentes*) ["We therefore conclude that trial courts possess the section 1385 discretion to strike a gang-related enhancement alleged under section 186.22(b)."].)[2] Baker simply did not act in any way as Ruiz's advocate. When Ruiz had asked if he could speak for himself, Baker told him he could not and completely failed to provide a guiding hand.

Here, the available evidence from Ruiz and Wickerd supports Ruiz's claim of ineffective assistance of counsel. This is not a case where counsel was silent because there was nothing to say. There was no tactical reason to say or do nothing. In addition to the declarations described above, Ruiz possessed documentation of his programming in prison, demonstrating that

---

[2] Before *Fuentes*, at least one appellate court had held that trial courts could not strike gang enhancements or refuse to impose gang alternate penalties such as the 15 years to life imposed on Ruiz for carjacking. (*People v. Campos* (2011) 196 Cal.App.4th 438, 451–452, overruled by *Fuentes, supra*, 1 Cal.5th at p. 229, fn. 8.) At most, according to the *Campos* court, a trial court could stay the punishment for the gang enhancement attached to an offense with a determinate term; it could not do so for enhancements which resulted in "an alternate sentence" such as the one imposed in this case. *Fuentes* opened up resentencing possibilities for Ruiz. Baker still did nothing.

13

Baker would have had a basis to argue that Ruiz had in fact been rehabilitating himself. And, as we have explained, Baker had a legal argument to make to strike the gang enhancement. Ruiz had a right to the effective assistance of counsel at his resentencing hearing. As a result of Baker's total inaction on every front, Ruiz was on his own.

## DISPOSITION

Relief on habeas corpus is granted. The matter is remanded to the trial court for a new resentencing hearing. In light of our ruling on the petition for writ of habeas corpus, the appeal is dismissed as moot.

**CERTIFIED FOR PUBLICATION**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.